[DO NOT PUBLISH]

IN THE UNITED STATES COURT OF APPEALS

FOR THE ELEVENTH CIRCUIT
_____

No. 17-10896
Non-Argument Calendar
_____

Agency No. A088-076-091

EDWIN POSADA PABON,

Petitioner,

versus

U.S. ATTORNEY GENERAL,

Respondent.

_____

Petition for Review of a Decision of the
Board of Immigration Appeals
_____

(November 15, 2017)

Before WILLIAM PRYOR, FAY and ANDERSON, Circuit Judges.

PER CURIAM:

Edwin Posada Pabon petitions for review of the Board of Immigration Appeals' ("BIA") order dismissing his appeal from the immigration judge's ("IJ") denial of his claim for withholding of removal.  We deny his petition.

## I. BACKGROUND

Pabon, a native and citizen of Colombia, entered the United States on January 23, 2001, on a B2 nonimmigrant visa for a visitor for pleasure, for a temporary period not to exceed July 22, 2001.  In June 2009, Pabon was issued a notice to appear by the Department of Homeland Security ("DHS"), charging that he was removable under the Immigration and Nationality Act ("INA") § 237(a)(1)(b), 8 U.S.C. § 1227(a)(1)(b).  Pabon admitted the allegations contained in the notice to appear and conceded removability.

In April 2013, Pabon filed an application for asylum and withholding of removal based on membership in a particular social group, as well as for relief under the Convention Against Torture and Other Cruel, Inhuman or Degrading Treatment or Punishment ("CAT").  Pabon alleged that he had received death threats and many members of his family had been assassinated in Colombia. Pabon described how many of his uncles and other relatives had been murdered by the Cali drug cartel in the 1980s and 1990s, how he was threatened and attacked on several occasions, and how he only survived because he had fled from Colombia. In 2015, Pabon filed an amended application and a replacement fact statement that

2

corrected inaccuracies in his original statement; he also moved for an exception to the one-year filing deadline for asylum claims.

At the merits hearing, Pabon testified that he had left Colombia because his "family had lots of problems" there. R. at 138. Pabon testified that his maternal uncles, Luis and Jorge Londoño, had been associated with the Medellin drug cartel. Luis was murdered by a member of the Cali cartel in 1988 or 1989; Jorge was murdered a year later. Pabon's four other maternal uncles also were murdered in Colombia between 1988 and 1992. Additionally, one of Pabon's maternal aunts was murdered and another disappeared. Pabon did not know where his other three maternal aunts were, but he knew they had fled from Colombia.

Pabon testified that in the late 1980s, his family constantly moved to avoid threats. He did not know much about his uncles' cartel involvement; he only knew that his family was targeted because of cartel problems. Pabon was never involved in a cartel and was never politically active in Colombia. In 1988, gunmen made an attempt on Pabon's life while he was driving in Medellin, breaking all of the windows in his car and hitting his friend in the arm and leg. Pabon survived because he drove to a restaurant where there were police; the gunmen also shot at the police car. In 1989, Pabon was attacked when armed men entered a restaurant he was in and began firing in his direction. Additionally, Pabon described an attack in a bar where armed men shot at a group he was with, killing his friend who

3

was right next to him. Pabon did not know the identity of the gunmen in any of the three situations.

Pabon testified that he came to the United States in 2001 because three of his cousins were killed in Colombia between 1990 and 2000. Pabon did not apply for asylum until 2013 because he did not think he would remain in the United States when he arrived; he decided to stay when he saw the problems in Colombia and he became afraid to return. Pabon testified that he did not know if the Cali cartel still existed at the time of the hearing; however, in his statement in support of his asylum application, he had claimed that the Cali cartel was dismantled in the early 2000s, through the efforts of the United States and Colombian governments.

Pabon believed he would be harmed if he returned to Colombia because a Cali cartel member, Guillermo Restrepo Lara, who had ordered the murders of several of his family members and offered a bounty for the murder of his family, had been asking about him. While Pabon had never received direct threats, people he knew would tell him that people were looking for him in order to kill him. In 2012, friends or distant family members called and told him that Lara was looking for him. Pabon did not believe that the Colombian government could protect him from Lara; he believed that he would be in danger if he returned.

Pabon's mother was never involved in a cartel and, at the time of the hearing, she lived in Bogota. His mother had worked in beauty salons and suffered

4

the same persecution and threats that everyone else in his family did at that time. Pabon's sister had lived in Cali for twenty-five years and had never been physically harmed in Colombia. Pabon's son lived with his mother in Medellin, had completed school, was working, and also had never been harmed. Pabon's daughter visited Colombia in 2005 and 2014; she went alone to Colombia in 2014 because Pabon did not see any danger as her mother's family did not have any problems. The last murder of a relative occurred in 1995, but Pabon had heard of threats against his family in 2012.

The IJ issued an oral decision denying Pabon's application. The IJ found that parts of Pabon's testimony were credible and other parts were not. Pabon's testimony that he had received a call in 2012 saying that his family was being threatened was not credible because Pabon would not say who the call came from, there had been no other threats communicated since he left Colombia in 2001, the alleged phone call did not occur until he was in removal proceedings, and he had sent his ten-year-old daughter alone to Colombia in 2014. Accordingly, the IJ found that Pabon had failed to establish an exception to the one-year deadline and concluded that his asylum application was barred on that basis.

The IJ found that Pabon was credible with respect to his claims about the deaths of his family members, his uncles' involvement with the Medellin cartel, and the three shootings he had described. However, the IJ concluded that Pabon

had failed to establish that he had suffered past persecution on account of a protected ground based on these incidents. The IJ also concluded that Pabon did not show that he would more likely than not be persecuted if he returns to Colombia. Although Pabon may subjectively fear returning to Colombia, his fear was not objectively reasonable given his family's ability to remain in Colombia unharmed, the fact that the Cali cartel had been dismantled, and that his relatives who formerly were involved with the cartels were now deceased. Accordingly, the IJ denied Pabon's application for withholding of removal. The IJ also denied Pabon's request for CAT relief, finding that Pabon did not establish that the government of Colombia or its agents, or someone else acting with its acquiescence, would more likely than not torture him upon his return.

Pabon filed a notice of appeal to the BIA, asserting that the IJ erred in denying withholding of removal, because his testimony had established past persecution and the presumption of future persecution was not rebutted. The BIA dismissed Pabon's appeal. The BIA determined that Pabon did not challenge the IJ's denial of his application for asylum and had thereby waived any challenge to that determination. The BIA further concluded that Pabon had not established that he suffered past persecution on account of a statutorily protected ground, citing the IJ's findings that he did not know who shot at him or why, that the Cali cartel was dismantled in the early 2000s, and that the incidents at issue occurred more than 20

years before.  The BIA determined that Pabon had not established it was more likely than not that he would be persecuted upon returning to Colombia because his mother, father, sister, and son lived safely in Colombia and had not received any threats or harm, because he had allowed his wife and daughter to travel to Colombia in 2005, and because he had allowed his then ten-year-old daughter to travel alone to Colombia in 2014.  Finally, although it noted that Pabon did not specifically challenge the denial of CAT relief, the BIA agreed with the IJ that he had not established that it was more likely than not that he would be tortured upon his return to Columbia, by or with the consent or acquiescence of the government.

On petition for review, Pabon argues that the BIA and IJ erred in denying his withholding of removal claim because he had established past persecution in Colombia based on his testimony that he was shot at by unknown gunmen on three different occasions, during a time when several members of his extended family had been killed by the Cali drug cartel.

## II. DISCUSSION

We review only the decision of the BIA, except to the extent that the BIA expressly adopts the IJ's decision.  *Al Najjar v. Ashcroft*, 257 F.3d 1262, 1284 (11th Cir. 2001).  Where the BIA agrees with the IJ's reasoning, we also will review the IJ's decision to that extent.  *Ayala v. U.S. Att'y Gen.*, 605 F.3d 941, 947-48 (11th Cir. 2010).  Because the BIA issued its own decision in this case, we

review the BIA's opinion.  *Al Najjar*, 257 F.3d at 1284.  Because the BIA explicitly agreed with several determinations made by the IJ, we review the decisions of both the BIA and the IJ to the extent of that agreement.  *Ayala*, 605 F.3d at 948.

Factual determinations are reviewed under the substantial-evidence test, which requires that we view the record in the light most favorable to the agency's decision and draw all reasonable inferences in favor of that decision.  *Adefemi v. Ashcroft*, 386 F.3d 1022, 1026-27 (11th Cir. 2004) (en banc).  We should affirm the BIA's decision if, considering the record as a whole, it is supported by reasonable, substantial, and probative evidence.  *Id.* at 1027.  In order to reverse administrative factual findings, we must determine that the record "compels" reversal, not merely that it supports a different conclusion.  *Id.*

Under the INA, an alien shall not be removed to a country if his life or freedom would be threatened in such country on account of race, religion, nationality, membership in a particular social group, or political opinion.  INA § 241(b)(3), 8 U.S.C. § 1231(b)(3).  The burden of proof is upon the alien to show his eligibility for withholding of removal.  8 C.F.R. § 208.16(b).  "The alien bears the burden of demonstrating that it is more likely than not [he] will be persecuted or tortured upon being returned to [his] country."  *Sepulveda v. U.S. Att'y Gen.*, 401 F.3d 1226, 1232 (11th Cir. 2005) (internal quotation marks omitted).

An alien may satisfy his burden of proof in either of two ways. *Tan v. U.S. Att'y Gen.*, 446 F.3d 1369, 1375 (11th Cir. 2006). First, an alien may establish past persecution in his country based on a protected ground. *Id.* If the alien establishes past persecution, it is presumed that his life or freedom would be threatened upon returning to that country unless DHS shows by a preponderance of the evidence that, among other things, the country's conditions have changed such that the alien's life or freedom would no longer be threatened upon his removal. 8 C.F.R. § 208.16(b)(1); *Tan*, 446 F.3d at 1375. Second, "[a]n alien who has not shown past persecution . . . may still be entitled to withholding of removal if he can demonstrate a future threat to his life or freedom on a protected ground in his country."[1] *Mendoza v. U.S. Att'y Gen.*, 327 F.3d 1283, 1287 (11th Cir. 2003).

Although neither the INA nor the regulations define "persecution," we have stated that "persecution is an extreme concept, requiring more than a few isolated incidents of verbal harassment or intimidation, and that mere harassment does not amount to persecution." *Sanchez Jimenez v. U.S. Att'y Gen.*, 492 F.3d 1223, 1232 (11th Cir. 2007) (quoting *Sepulveda*, 401 F.3d at 1231). Being intentionally shot at is sufficiently extreme to establish persecution, even if the attack is unsuccessful, and there is no strict physical harm requirement to establish persecution. *See id.* at

---

[1] In his petition for review, Pabon only challenges the BIA's past persecution finding and does not specifically challenge the future persecution finding independent of the rebuttable presumption. Thus, the only issue is whether substantial evidence supports the finding that Pabon did not establish past persecution.

9

1233 ("[A]ttempted murder is persecution."). However, threatening acts or harm against an alien's family members does not constitute or imply persecution of the alien where the threats and harm were not directed at him. *Rodriguez v. U.S. Att'y Gen.*, 735 F.3d 1302, 1308-1309 (11th Cir. 2013).

Here, there was no evidence suggesting that the murders of Pabon's extended family members were committed to harm or threaten him. *See id.* at 1309. Accordingly, the murders of his family members did not constitute persecution of Pabon, and any past persecution that he experienced must have been based on events that directly happened to him. *Id.* Furthermore, while attempted murder qualifies as persecution, the record, when all facts and inferences are drawn in favor of the agency decision, does not compel the conclusion that the shootings to which Pabon testified were attempted murders. *See Sanchez Jimenez*, 492 F.3d at 1233. Pabon inferred that he was the target of the three shootings to which he testified, but the record does not compel a reasonable factfinder to accept these inferences. *See Adefemi*, 386 F.3d at 1027. Because substantial evidence supports the BIA's determination that Pabon did not establish past persecution in Colombia, his petition for review is denied.[2]

**PETITION DENIED.**

---

[2] Pabon has abandoned any potential arguments regarding asylum or CAT relief by failing to brief them. *See Sepulveda*, 401 F.3d at 1228 n.2. Further, any such potential arguments would be unexhausted because they were not made to the BIA. *See Amaya-Artunduaga v. U.S. Att'y Gen.*, 463 F.3d 1247, 1250 (11th Cir. 2006); *see also* 8 U.S.C. § 1252(d)(1).